248 P.3d 199

Nadia H. BASHIR, Petitioner,

v.

The Honorable Susanna C. PINEDA, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

State of Arizona, Real Party in Interest.

No. 1 CA–SA 10–0267.

Court of Appeals of Arizona, Division 1, Department E.

Feb. 8, 2011.

Judge of the Arizona Court of Appeals, Division     One, was designated to sit on this matter.

Osborn Maledon, P.A. By Larry A. Hammond, Timothy J. Eckstein, Christina C. Rubalcava, Phoenix, Attorneys for Petitioner.

1. A.R.S. § 21–412 states, in relevant part:
   The grand jurors are under no duty to hear evidence at the request of the person under investigation, but may do so.... The grand jurors shall weigh all the evidence received by them and when they have reasonable ground to believe that other evidence, which is available, will explain away the contemplated charge, they may require the evidence to be produced.

2. Rule 12.6 states:
   A person under investigation by the grand jury may be compelled to appear or may be permit-

William G. Montgomery, Maricopa County Attorney By Arthur Hazelton, Deputy County Attorney, Phoenix, Attorneys for Real Party in Interest.

## OPINION

IRVINE, Judge.

¶ 1 Nadia Bashir seeks relief from the trial court's denial of her motion to remand to the grand jury for a redetermination of probable cause. *See* Ariz.R.Crim.P. 12.9(a). Bashir contends the trial court erred because the prosecutor failed to communicate to the grand jury information concerning testimony and evidence she wished to present pursuant to Arizona Revised Statutes ("A.R.S.") section 21–412 (2002)[1] and Arizona Rule of Criminal Procedure ("Rule") 12.6.[2] Instead, the prosecutor told the grand jury only that Bashir wished to testify. We find that the State had a duty to inform the grand jury of the subject and outline of Bashir's proposed evidence. Because the prosecutor did not do so, we conclude that the grand jury could not make an informed decision regarding whether to allow Bashir to appear and that the trial court should have granted the motion to remand. Therefore, we grant the requested relief.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 On August 23, 2009, Bashir's four-year-old son was found floating in the family swimming pool. He died three days later. The son was a special needs child with autism and cerebral palsy. It is undisputed that he could not swim. Bashir had left the

ted to appear before the grand jury upon the person's written request. Such person shall be advised of the right to remain silent and the right to have counsel present to advise the person while he or she is giving testimony. If the person is accompanied by counsel before the grand jury, counsel shall not attempt to communicate with anyone other than his or her client. Any communication or attempted communication shall result in counsel's summary expulsion by the foreman from the grand jury session.

boy at the shallow step of the pool with his feet dangling in the water while she went into the house to assist her older son to prepare for school. The parties dispute the details and timing of the next events, but at some point Bashir saw her son floating in the pool and pulled him out, had the older boy call 911, and began CPR.

¶ 3 When police recommended criminal charges be filed related to the drowning, Bashir's counsel sent the assigned prosecutor a ten-page letter detailing the family's history; the son's health conditions, development and schooling; and details concerning the incident and investigation that differed from the police's version. Attached were numerous documents purporting to support the assertions in the letter. Subsequent emails specifically stated that Bashir would like to testify if the case was presented to a grand jury and requested that "the State present to the Grand Jury the exculpatory evidence contained in our December 15, 2009 letter."

¶ 4 When the State presented the case to the grand jury, the prosecutor advised it simply that Bashir had made a written request to testify. After deliberations, the foreman informed the prosecutor that "[t]he majority of the people do not want to hear from the person that's accused of the crime." The grand jury then returned an indictment charging Bashir with negligent homicide and negligent child abuse, both class four felonies.

¶ 5 Bashir subsequently filed a motion to remand arguing, among other things, that "by failing to provide even a simple outline of her anticipated testimony, the State precluded the grand jury from making an informed decision whether to hear her testimony." The trial court denied the motion, stating that "the Defendant has failed to show that the State's presentation of evidence was not fair and impartial." Bashir filed a motion for reconsideration, addressing only whether the State was required to provide information about her proposed testimony when it conveyed to the grand jury her offer to testify. The trial court also denied that motion.

¶ 6 "A challenge to the denial of a motion for remand generally must be made by special action before trial, and is not reviewable on direct appeal." *Francis v. Sanders,* 222 Ariz. 423, 426, ¶ 9, 215 P.3d 397, 400 (App.2009). Because the issue raised here "presents a question of statewide importance that is likely to recur, the answer to which will provide guidance on the extent to which a prosecutor has a duty," we accept special action jurisdiction. *Id.*

## DISCUSSION

¶ 7 The parties agree that this case requires an interpretation of our supreme court's decision in *Trebus v. Davis,* 189 Ariz. 621, 426, 944 P.2d 1235 (1997). That case addressed A.R.S. § 21–412 and Rule 12.6, and the "responsibility of a prosecutor who learns that a defendant wishes to present exculpatory evidence or testify before a grand jury." *Id.* at 622, 944 P.2d at 1236.

¶ 8 The State contends that *Trebus* specifically did not create a "mechanical test" to measure whether due process is satisfied, and what constitutes a fair and impartial presentation to the grand jury will vary. *See Trebus,* 189 Ariz. at 626, 944 P.2d at 1240. The State notes that the role of a grand jury is to determine whether probable cause exists, and expanding its proceedings "beyond that point would put the grand juries in the business of holding mini-trials." *See also id.* at 625, 944 P.2d at 1239 ("We believe, however, that issues such as witness credibility and factual inconsistencies are ordinarily for trial."). The State further argues that "the issue of what the prosecutor must do to comply with Rule 12.6 and A.R.S. § 21–412, when a person under investigation requests to testify before the grand jury was not at issue in *Trebus* because the defendant there did not request to testify." Therefore, given the limited role of the grand jury, the State reads *Trebus* as requiring it to inform the grand jury only of clearly exculpatory evidence and an offer to appear. Finally, the State argues Bashir's proposed evidence is not exculpatory, but more in the nature of a mitigation report.

¶ 9 Bashir argues the prosecutor had a duty to provide some detail of her proposed testimony to the grand jury. She points to this language in *Trebus:*

Under A.R.S. § 21–412 and Rule 12.6, the grand jury is to decide if it wishes to hear a defendant or his evidence. It can make an informed decision only if, on the one hand, the defendant's request provides information with some degree of detail, at least as to the subject and outline of the proposed evidence, and, on the other hand, if the prosecutor conveys that information to the grand jury. We believe the statute and rule contemplate both requirements.

*Id.* at 626, 944 P.2d at 1240. Bashir further argues that, because the prosecutor's duty to inform the grand jury of clearly exculpatory evidence already exists in every case, the State's position that it is only obligated to convey to the grand jury clearly exculpatory evidence renders the duty created in *Trebus* irrelevant.

¶ 10 Our review of *Trebus* leads us to agree with Bashir that if a defendant has provided "some degree of detail, at least as to the subject and outline of the proposed evidence," the prosecutor has a duty to "convey[ ] that information to the grand jury." *Id.* at 626, 944 P.2d at 1240. *Trebus* clearly provides that the grand jury is given the choice to hear from a defendant, not the prosecutor. As the supreme court stated:

Given the power of the prosecutor in the grand jury system, the statutory right of the grand jury to decide whether to hear evidence from the defendant, and the defendant's right to request appearance before the grand jury, we hold the county attorney must inform the grand jury that the defendant has requested to appear or has submitted exculpatory evidence. Without such a responsibility, A.R.S. § 21–412 and Rule 12.6 are rendered meaningless.

The grand jury is, of course, free to either grant or deny the defendant's request, but this choice is for the grand jury and not for the county attorney. *See State v. Just*, 138 Ariz. 534, 540, 675 P.2d 1353, 1359 (App. 1983) ("The purpose of [A.R.S. § 21–412] is obviously to give the grand jury the opportunity to hear the evidence it deems necessary to make its probable cause determination.").

*Id.* at 625, 944 P.2d at 1239. The court's holding built upon earlier language in a supreme court decision that the "rule, the statute, and the concept of an independent grand jury give the grand jury, not the prosecution, the right to make these determinations." *Id.* at 624, 944 P.2d at 1238 (quoting *Crimmins v. Superior Court (Collins)*, 137 Ariz. 39, 44, 668 P.2d 882, 887 (1983) (Feldman, J., specially concurring)).

¶ 11 The prosecutor's duty has been further addressed in other court decisions. In *Herrell v. Sargeant*, 189 Ariz. 627, 629, 944 P.2d 1241, 1243 (1997), decided the same day as *Trebus*, the supreme court described *Trebus* as holding that "on proper request, the prosecutor is obligated to inform the grand jury of any exculpatory matters, thus enabling the jury to make an informed decision under A.R.S. § 21–412." In *Herrell*, the defendant was charged with aggravated assault. Although Herrell did not offer to personally appear before the grand jury, through counsel he requested that the grand jury be presented with evidence showing he was justified in using force to prevent harm to his daughter. The supreme court agreed this should have been done:

Given the unique facts of this case and its similarities to *Crimmins*, we believe it should have been apparent to the deputy county attorney presenting the case the second time that to have a fair and impartial presentation, it was necessary to inform the grand jury about Herrell's version of the relevant, substantive facts.

*Id.* at 630, 944 P.2d at 1244. *See also Francis*, 222 Ariz. at 427, 215 P.3d at 401 ("We conclude that accurate instructions to the grand jury concerning an affirmative defense may be just as essential to avoiding needless prosecution as instruction on one of the elements of the crime."). Although *Herrell* involved "unique facts" concerning a justification defense, we read it as recognizing that a grand jury's decision will often depend on being adequately informed of the circumstances surrounding an incident, including the defendant's version of events. *See also Maretick v. Jarrett*, 204 Ariz. 194, 199, ¶ 20, 62 P.3d 120, 125 (2003) (holding defendant's "right to due process was violated by the

detective's misleading testimony, coupled with the prosecutor's interference with the grand jury's independence and his failure to instruct the jury regarding the pertinent law.").

¶ 12 These cases show that the prosecutor always has the duty to inform the grand jury of clearly exculpatory evidence, even if a defendant has not requested to appear or asked for information to be presented. This was the situation in *Trebus,* in which the request was too vague to trigger any greater duty of the prosecutor.

¶ 13 The prosecutor also has the duty, "on proper request, . . . to inform the grand jury of any exculpatory matters." *Herrell,* 189 Ariz. at 629, 944 P.2d at 1243. Because of the request, the prosecutor must view the evidence with a wider view and consider whether a fair and impartial presentation requires informing the grand jury of the defendant's version of the facts as well as legal instructions concerning possible justification and affirmative defenses. The prosecutor need not, however, present evidence that is not exculpatory, including evidence relating solely to "witness credibility and factual inconsistencies," which are ordinarily appropriate for trial. *Trebus,* 189 Ariz. at 625, 944 P.2d at 1239. In the trial court in this case, the State argued that its presentation to the grand jury did take into account some of the facts Bashir alleged to be exculpatory.

¶ 14 A different situation is presented when a defendant requests to appear before the grand jury. The defendant is not asking the prosecutor to present evidence to the grand jury. The defendant is seeking an opportunity to present evidence herself. Consequently, the issue is not whether the proposed evidence is "clearly exculpatory" or "exculpatory." The issue is what the prosecutor should tell the grand jury about the defendant's request so that it can make an informed decision about the defendant's request to appear. *Trebus* set the standard. If a "defendant's request provides information with some degree of detail . . . as to the subject and outline of the proposed evidence," the prosecutor must "convey[ ] that information to the grand jury." *Id.* at 626, 944 P.2d at 1240.

¶ 15 This does not mean, however, that the prosecutor must make the defendant's case for her. The standard is that "the grand jury must receive a fair and impartial presentation of the evidence," and whether the grand jury's decision was informed because it was given the "right to hear all relevant, non-protected evidence that bears on the case." *Maretick,* 204 Ariz. at 197, ¶¶ 8, 9, 62 P.3d at 123. What constitutes a fair and impartial presentation will vary, so the "degree of detail" of information that the prosecutor must present to the grand jury will also "vary from case to case." *Trebus,* 189 Ariz. at 626, 944 P.2d at 1240 (quoting *State v. Superior Court (Mauro),* 139 Ariz. 422, 424, 678 P.2d 1386, 1388 (1984)).

¶ 16 Therefore, we hold that if a defendant has requested to appear and provided some detail of the proposed testimony and evidence, a prosecutor has a duty to convey that information to the grand jury in a fair and impartial manner so that it may make an informed decision. Failure to do so removes the choice from the grand jury and justifies remanding the indictment.

¶ 17 In this case, the trial court concluded that the presentation to the grand jury was fair and impartial. Ordinarily, that conclusion would be accorded considerable deference. "But when a [trial court] commits an 'error of law . . . in the process of reaching [a] discretionary conclusion,' [it] may be regarded as having abused [its] discretion." *Francis,* 222 Ariz. at 426, 215 P.3d at 400. Here, we conclude that the trial court erred by not requiring the prosecutor to inform the grand jury of the details of Bashir's proposed testimony. This is not a case in which the trial court found the prosecutor's summary of the proposed testimony to be fair. There was no summary. Consequently, the grand jury was not fully informed when it made its decision.

¶ 18 Nor can we find the trial court's error harmless. *See Maretick,* 204 Ariz. at 198–99, ¶ 15, 62 P.3d at 124–25 (applying harmless error analysis to grand jury proceeding). This is not a case in which the elements of the offenses are simply defined

by the actions of the defendant. The requisite mental state for both negligent homicide and negligent child abuse is "criminal negligence." A.R.S. §§ 13–1102(A) (2010), – 3623(A)(3) (2010). The law defines "criminal negligence" as a failure to

> perceive a substantial and unjustifiable risk that [death] will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

A.R.S. § 13–105(10)(d) (2010). The proposed testimony concerned Bashir's son's diagnoses, development and level of functioning— information that directly related to the standard of care necessary to find criminal negligence.

¶ 19 The position of the State's witness before the grand jury was that a responsible mother would not let a four-year-old sit by himself by the pool. Implicit in this statement is that Bashir was criminally negligent simply because she left her son unsupervised. The grand jury may very well have agreed. Nevertheless, Bashir's proposed testimony would have directly addressed both her son's conditions and her perception of them. Being informed of her proposed testimony might have influenced the grand jury's decision to hear from her.

¶ 20 We emphasize that the issue is not whether the grand jury might be sympathetic to Bashir. *See Maretick*, 204 Ariz. at 199, ¶ 17, 62 P.3d at 125 ("While sympathy is not a relevant factor in determining probable cause, it is impossible to know where the questioning might have led or how the information might have influenced the jury...."). The issue is whether we can "be confident beyond a reasonable doubt that the error had no influence on the jury's judgment." *Id.* at 198, ¶ 15, 62 P.3d at 124. In this case, the error was not that the grand jury chose not to hear from Bashir, but that it was not fully informed of her offer to appear and testify. Under the facts of this case, we cannot conclude that this error did not influence its decision.

¶ 21 We also note that the grand jury foreman informed the prosecutor that "the majority of the people do not want to hear from" Bashir. Implicitly, some of the grand jurors did want to hear from her. Additional information about the subject and outline of her testimony might have influenced more of the grand jurors to want to hear from her.

### CONCLUSION

¶ 22 If a defendant requests to appear before a grand jury and "provides information with some degree of detail ... as to the subject and outline of the proposed evidence," the prosecutor has a duty to convey that information to the grand jury. *Trebus*, 189 Ariz. at 626, 944 P.2d at 1240. If the prosecutor fails to do so, the trial court may remand the case to the grand jury for a new determination of probable cause. In this case, we conclude that the trial court should have granted the motion to remand. Therefore, we grant the requested relief and remand for a new determination of probable cause by the grand jury.

CONCURRING: PETER B. SWANN, Presiding Judge and MAURICE PORTLEY, Judge.